UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

TRIVEL, INC.

    Plaintiff,

vs.

TECH SMART USA, INC.

and

VECTORTEK, LLC

    Defendants.

Case No.: 25-2-25-cv-10190-SKD-CI

Honorable Susan K. DeClerq

Daniel M. Press
Chung & Press
Attorneys for Plaintiff
6718 Whittier Avenue
Suite 200
McLean, VA 22101
703-734-3800
Email: dpress@chung-press.com

Kurt A. O'Keefe
Kurt Okeefe, Attorney
Attorneys for Plaintiff
1254 Woodbridge Street
St. Clair Shores, MI 48080
313-962-4630
Fax: 313-731-0424
Email: koklaw@gmail.com

Marc Sackin
MORGAN STARR SACKIN, PLLC
Attorneys for Defendants
208 W. Park Street
Lapeer, MI  48446
(810) 664-9908
Email: msackin@starrsackin.com

### DEFENDANT TECH SMART USA INC.'S ANSWER TO COMPLAINT

Defendant TECH SMART USA, INC. ("Defendant"), by its attorneys Morgan Starr Sackin PLLC, in support of its Answer to Plaintiff's Complaint, states as follows:[1]

---

[1] Chris Carey has hired counsel to respond to the Complaint and defend this litigation on behalf of Defendant Tech Smart USA solely in his capacity as Officer of Tech Smart USA, Inc. based on his fiduciary duty in his role as Officer not to

1

## PARTIES

1. Denies knowledge or information sufficient to form a response.

2. Admits.

3. Admits.

## JURISDICTION

4. Paragraph 4 of the Complaint is a legal conclusion that does not require a response. To the extent that a response is required, Defendant lacks knowledge or information sufficient to form a response.

5. Paragraph 5 of the Complaint is a legal conclusion that does not require a response. To the extent that a response is required, Defendant admits.

## VENUE

6. Paragraph 6 of the Complaint is a legal conclusion that does not require a response. To the extent that a response is required, Defendant admits.

## FACTS

7. Denies knowledge or information sufficient to form a response as to Paragraph 7 of the Complaint but avers that Defendant believed that Plaintiff imported Chinese-designed e-bikes and e-trikes for sale primarily in Canada.

8. Defendant admits the allegations contained in Paragraph 8 to the extent that it alleges that Plaintiff and Tech Smart entered into a "Distribution Agreement" which states it was entered into

---

allow Tech Smart USA, Inc. to be in default.  Chris Carey affirmatively represents that he has no ownership and/or shareholder interest in Tech Smart USA. Inc. and that all ownership/shareholder interest is held by Mr. Robert Carey, who has elected to refuse to participate in defending this lawsuit.

on or about February 5, 2024 and that Paragraph 8 quotes certain verbiage in the Agreement. However, Defendant refers this Court to the Distribution Agreement for its full and complete terms.

      9.      Denies the allegations contained in Paragraph 9 of the Complaint as untrue. The agreement was correctly titled a "Distribution Agreement" and not a purchase agreement. Defendant Tech Smart did not agree to purchase products and Plaintiff tellingly does not cite to any provision of the Agreement that states that Defendant Tech Smart agreed to purchase products.

      10.      Denies the allegations contained in Paragraph 10 of the Complaint to the extent that it mischaracterizes the agreement. Defendant avers that returns are determined by the reseller of the product and the reports they generate.

      11.      Denies the allegations contained in Paragraph 11 of the Complaint for the reason that Chris Carey has never been the principal of, or had any ownership interest whatsoever in, Tech Smart. He was merely an officer of Tech Smart. Not was Vectortek the alter ego or successor in interest of Tech Smart or used interchangeably with Chris Carey. Defendant Vectortek further avers that Vectortek serviced Plaintiff because the owner of Tech Smart did not wish to participate in ebikes and was not required to do so under the terms of the Distribution Agreement and Tech Smart's required payment terms would not allow the distribution of ebikes. Plaintiff was fully aware that it would be dealing with, and placing purchase orders under, Vectortek rather than Tech Smart and consented to dealing with this separate and distinct entity.

      12.      Denies the allegations contained in Paragraph 12 of the Complaint as untrue and avers that Defendant Vectortek always made payments in full pursuant to the terms of the Distribution Agreement and never provided fraudulent, false or inflated numbers. In fact, in many cases Defendant Vectortek overpaid due to Plaintiff's complaints that it lacked liquidity. The dispute herein is, in part, that in order for the items not to be returned by the re-seller (i.e. QVC) the products

need to be shipped within 48 hours of the reseller's order. During the consistent occasions when Plaintiff failed to ship the items timely, QVC rejected the product and returned them without paying for the products. Moreover, the below is a non-exhaustive list of examples as to why Plaintiff's products had to be regularly returned, resulting in money owed to Defendant:

- On certain occasions Plaintiff provided significantly less products than what was ordered and paid for by Vectortek. Hundreds of bikes were never delivered even though orders were captured.
- Bikes were returned to Plaintiff at an extremely high return rate due to inadequate packaging protecting the bikes and a power issue that was disregarded by Trivel.
- Plaintiff regularly shipped bikes which were different than the make and model of the bikes that were actually order – and thus needed to be returned.
- QVC asked for the bikes to be 95% assembled.
- Plaintiff provided bikes that were not assembled and were thus rejected by QVC and not able to be sold.
- Plaintiff misrepresented to QVC the scooter as having a 16-inch wheel and in reality it had a 14-inch wheel.
- The rider was additionally initially shipped in the wrong color causing it to be further late. The bikes often were missing items, such as mirrors.
- While on television, the bike's rider's faulty throttle caused an on-air host to crash on live television.
- Plaintiff failed to pay on air guests as required by QVC and Vectorek. Vectortek therefore had to pay on Plaintiff's behalf..

13. Denies the allegations contained in Paragraph 13 of the Complaint as untrue. Defendant further avers that Plaintiff violated the parties' Non-Disclosure Agreement and misled several representatives at QVC. Defendant Vectortek transparently shared reports with Plaintiff and Plaintiff would consistently renege on agreed upon terms. The CEO of Plaintiff even inspected Vectortek's warehouse to inspect and confirm the amount of returns. Due to late and inadequate supply of inventory provided by Plaintiff which therefore had to be returned pursuant to the terms of the Distribution Agreement, unopened returns were retasked as inventory at Trivel's CEO direction. The rest of the products were returned to Trivel. All information was clearly provided from Vectortek to Trivel.

14. Denies sufficient information or knowledge to form a response as to the allegations contained in Paragraph 14 of the Complaint because Defendant does not know the full extent of the communications between Plaintiff and QVC. Defendant further denies the asserted number of returns asserted by Plaintiff. Moreover, Trivel violated the NDA and misled several representatives at QVC into making statements to Trivel that were inaccurate and/or by taking partial statements. Among other things, the numbers asserted by Plaintiff do not take into account the frequent occasions whereby QVC had to "return" items that were not shipped to QVC at all because inventory was not available. Such instances constitute "returns" for products paid for by Defendant to which they are entitled to reimbursement under the Distribution Agreement although QVC's internal record keeping do not consider the products as having been returned because the products were never received.

15. Denies Paragraph 15 as untrue and avers that Defendant does not know how Plaintiff calculated this number because the Complaint is devoid of any calculations.

16. Denies Paragraph 16 as untrue, except denies knowledge or information sufficient to form a belief as to the amount of storage fees and costs Plaintiff supposedly has been charged.

Defendant further avers that Plaintiff delivered the products to the incorrect address. Vectortek consistently alerted Plaintiff of their failure to deliver products. Moreover, the City of Industry warehouse was capable of storing and did deliver the products requested. The space was more than adequate for the fulfillment of the items. Trivel further used the Vectotek locations to store several unsellable bikes without Vectortek's permission and failed to pick them up repeatedly. Because Plaintiff's delivery was consistently extremely late, it would have been impossible to deliver to Defendant's Michigan warehouse – thus requiring delivery to other warehouses. Additionally, by delivering the products to the wrong location, UPS then had to be utilized to deliver the items to the correct location. However, UPS had issues shipping extremely large items and limited delivery to . They were limited to 200 items a day at that location. Had they shipped to the correct location non items per day. Had Plaintiff shipped the items to the correct location none of the issues and extra wages and costs would have occurred. In other words, any additional fees and costs incurred were due to the negligence of Plaintiff.

## FIRST COUNT

## BREACH OF CONTRACT

17. Defendant realleges and incorporates by reference paragraphs 1 through 16 as if set forth herein.

18. Denies the allegations contained in Paragraph 18 of the Complaint as Vectortek is not a party to the Distribution Agreement.

19. Denies the allegations contained in Paragraph 19 of the Complaint as the agreement is a distribution agreement and not a purchase agreement.

20. Denies the allegations contained in Paragraph 20 of the Complaint as untrue for the reasons set forth above.

21. Denies the allegations contained in Paragraph 21 of the Complaint as untrue for the reasons set forth above and further because there is no alleged violation of the Agreement relating to storage fees.

22. Denies the allegations contained in Paragraph 20 of the Complaint as untrue for the reasons set forth above.

WHEREFORE, Defendant Tech Smart respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety an award Defendant costs and attorneys' fees wrongfully incurred.

Respectfully submitted,

Date:  April 3, 2025                     MORGAN STARR SACKIN PLLC

/s/ Marc Sackin
Marc Sackin
Attorneys for Defendant Tech Smart USA, Inc.
208 W. Park Street
Lapeer, MI  48446
(810) 664-9908

## CERTIFICATE OF SERVICE

I, Marc Sackin, certify that on April 3, 2025, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Marc Sackin
Marc Sackin