UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRIVEL, INC.,

               Plaintiff,                        Case No. 2:25-cv-10190

v.                                   Honorable Susan K. DeClercq
                                         United States District Judge

TECH SMART USA, INC., and
VECTORTEK, LLC,

               VectorTek.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE THE SETTLEMENT (ECF No. 21)

In February 2024, the Parties began a commercial relationship to sell electric mobility products through QVC. That relationship soured over returned goods and prompted this lawsuit. In June 2025, however, the Parties settled, with Defendants Tech Smart USA, Inc. and VectorTek, LLC agreeing to pay Plaintiff Trivel, Inc. ("Trivel") money and return at least 225 "e-bikes/e-tricycles." Defendants returned only 127 qualifying units; 98 short of their obligation. Accordingly, Trivel's motion will be granted, and judgment will be entered against Defendants.

## I. BACKGROUND

Trivel manufactures and sells mobility products. ECF No. 29 at PageID.238. Primarily, Trivel sells electric tricycles and power-assisted e-bikes under brand names including "Ollie," through Costco and Best Buy. *Id.* In February 2024, Trivel

and Defendant VectorTek, LLC[1] ("VectorTek") entered into a distribution agreement to sell Trivel's products through QVC. ECF No. 1 at PageID.3; ECF No. 1-1.

In January 2025, Trivel filed suit against VectorTek alleging inaccurate reporting of customer returns. ECF No. 1. On June 6, 2025, the parties settled that dispute and memorialized the settlement in a handwritten agreement. ECF No. 29 at PageID.246; ECF No. 27-1 ("settlement agreement").

The settlement agreement provided for an up-front payment—$455,000 due within 10 days—and required VectorTek to return "at least 225 e-bikes/e-tricycles within 90 days." ECF No. 27-1. It also provided that "[i]n the event that less than 225 units are provided, then Defendants shall be required to compensate Trivel the sum of $1,390 for each unit less than 225." *Id.* The agreement further provided that "[e]ach e-bike/e-tricycle constitutes a unit for purposes of this paragraph regardless of its condition as long as it was a unit provided by Trivel." *Id.*

The up-front payment was made on time. ECF No. 29 at PageID.247. But the parties dispute whether VectorTek's deliveries satisfy the required 225 e-bikes/e-tricycles. On July 8, 2025, Trivel picked up 100 units from VectorTek's warehouse. *Id.* at PageID.295. This is undisputed. *Id.* at PageID.407.

---

[1] VectorTek, LLC has since been renamed Tech Smart USA, Inc. ECF No. 29, PageID.238. For clarity, all references to VectorTek, LLC, also include Tech Smart USA, Inc.

On September 23, 2025, Trivel sent another truck for a pickup. *Id.* at PageID.297. Sebastien Davault, Trivel's General Manager, testified that when he received this truck, it had 21 e-trikes, 24 scooters, and three additional boxes. *Id.* at PageID.298. The first box contained a tricycle of a different brand, one not sold by Trivel. *Id.*; ECF No. 27-7 at PageID.128. The second box contained "packaging stuff and a seat post." ECF No. 29 at PageID.298; ECF No. 27-7 at PageID.129. And the third box contained two baskets, one wheel, and one saddle. ECF No. 29 at PageID.299; ECF No. 27-7 at PageID.130.

On October 3, 2025, Trivel sent two more trucks. ECF No. 29 at PageID.310; ECF No. 27-8 at PageID.131–134; ECF No. 27-9 at PageID.135–137. Mr. Devault testified that these trucks yielded six additional satisfactory units, together with 56 empty boxes and pallets. ECF No. 29 at PageID.310–11; ECF No. 27-2 (listing four qualifying units and 32 empties on one truck and two qualifying units and 24 empties on the other). Video taken of the two trucks at delivery show the driver breaking the trailer's seal and opening the trailer alongside Mr. Davault. ECF No. 29 at PageID.306–09; VIDEO VAN 1 OPENING OCT 8TH 2026. Inside the trailer, a box labeled "Ollie" is visible in front of the door, along with multiple pallets and short square boxes containing some components, and in the back of the trailer another "Ollie" box. *Id.* A second video shows two "Ollie" boxes with several components inside. VIDEO EMPTY BOX 1. Another video shows one "Ollie" box with a single red

fender inside. EMPTY BOX VIDEO. Two more videos show similar "Ollie" boxes and short square boxes empty or with just small components inside. VIDEO 2 EMPTY BOX; VIDEO 3 EMPTY BOX. The last three videos depict similar images of boxes. IMG_7241; IMG_7243; IMG_7234.

Unsatisfied with these deliveries, Trivel moved to reopen the case to enforce the settlement on October 22, 2025. ECF No. 21. VectorTek responded that it had made at least 225 units available and had not breached the agreement. ECF No. 22. Trivel replied, requesting an evidentiary hearing. ECF No. 23. After a status conference at which counsel agreed to reopen the case, the Court granted the motion, reopened the case solely to enforce the settlement, and allowed 90 days of discovery on the settlement's terms and possible breach. ECF No. 25. The Court held an evidentiary hearing on June 15, 2026. ECF No. 29.

## II. LEGAL STANDARD

A federal court has broad inherent authority and equitable power to enforce a settlement agreement reached in a case before it. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000). The court may summarily enforce the settlement agreement if: "(1) it has subject matter jurisdiction over the separate, breach of contract controversy surrounding the settlement agreement; (2) it determines that agreement has been reached on all material terms; and (3) the

agreement is clear and unambiguous and no issue of fact is present." *Stenger v. Freeman*, 683 F. App'x 349, 350 (6th Cir. 2017) (Clay, J., concurring) (cleaned up).

Where material factual disputes exist concerning the terms of the agreement or its performance, the court must hold an evidentiary hearing. *See Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621–22 (6th Cir. 1973). In any event, "[t]he court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988).

### III. DISCUSSION

This Court addresses only the parties' performance under the settlement agreement, not the underlying dispute. The evidence introduced at the evidentiary hearing shows VectorTek failed to comply with the settlement agreement, warranting compensatory damages for Trivel.

### A. Jurisdiction

Federal courts must confirm jurisdiction before reaching the merits of any case. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). A federal court does not automatically retain ancillary jurisdiction to enforce a settlement agreement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382 (1994). Absent incorporation of the settlement terms to the dismissal order or other express language regarding the Court's jurisdiction, "enforcement of the settlement

agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* Diversity jurisdiction will suffice. *See Limbright v. Hofmeister*, 566 F.3d 672, 676 (6th Cir. 2009).

Diversity jurisdiction exists here: the parties are diverse and the amount in controversy exceeds $75,000. *See* ECF Nos. 1, 21. This satisfies *Limbright* and *Kokkonen*. Moreover, the settlement sgreement expressly reserves this Court's jurisdiction over breaches, and the parties confirmed jurisdiction on the record at the June 15, 2026, evidentiary hearing. *See* ECF No. 27-1; ECF No. 29 at PageID.225–28. Accordingly, this Court has jurisdiction. *See, e.g., Cernelle v. Graminex, LLC*, 437 F. Supp. 3d 574, 593 (E.D. Mich. 2020). [2]

## B. Breach of Settlement

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 848 N.W.2d 95, 104 (Mich. 2014). The parties

---

[2] The settlement agreement contains no choice-of-law provision. See ECF No. 27-1. The parties do not dispute that Michigan law applies. The settlement was negotiated and executed in Michigan, the disputed inventory is stored in Michigan, and this action was brought in Michigan. Accordingly, the Court applies Michigan law. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971).

do not dispute the existence of the settlement agreement. They dispute only whether VectorTek breached its obligations under it.

Trivel claims VectorTek breached the settlement agreement by returning only 127 e-bikes/e-tricycles; 98 short of their obligation. ECF No. 29 at PageID.231–32. VectorTek counters that bills of lading show 207 units delivered, and several units are still available at VectorTek's warehouse. ECF No. 29 at PageID.407–08. It also argues that all units it provided comply with the settlement agreement because the contractual language encompasses scooters, damaged returns, partial returns, and component returns. *Id.* at PageID.405.

But only e-bikes and e-tricycles originally provided by Trivel qualify as "units" under the settlement agreement. Scooters, loose parts and components, and units not originally provided by Trivel do not count toward the 225-unit guarantee in the settlement agreement's third paragraph. Therefore, VectorTek must compensate Trivel $1,390 for each unit short of 225.

### 1. Definition of E-bikes/E-tricycles

"A settlement agreement in essence is a contract." *Concerned Pastors for Soc. Action v. Khouri*, 658 F. Supp. 3d 495, 501 (E.D. Mich. 2023) (citing *Cogent Sols. Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013)). "When enforcing a contract, the first objective is to honor the intent of the parties, and the prime source

of that intent is the plain language of the agreement." *Id.* (cleaned up). Under Michigan law,

> if the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. The language of a contract should be given its ordinary and plain meaning.

*Wells Fargo Bank, NA v. Cherryland Mall Ltd. P'ship (On Remand)*, 835 N.W.2d 593, 607 (Mich. Ct. App. 2013).

Here, the parties dispute the meaning of "e-bikes/e-tricycles." Two interpretive canons are helpful to define this term. First, "[t]he expression of one thing is the exclusion of another, and a thing expressed puts an end to tacit implication." *Grinnell Bros. v. Brown*, 171 N.W. 399, 400 (Mich. 1919); *Nat'l Fire Ins. Co. v. Roofmaster Constr., Inc.*, No. 04-CV-71142-DT, 2005 U.S. Dist. LEXIS 35033, at *28 (E.D. Mich. Apr. 28, 2005) ("The general principle of contract interpretation, *expressio unius est exclusio alterius*, holds that a specific mention of one thing implies an intent to exclude another."). Second, "[i]f no reasonable person could dispute the meaning of ordinary and plain contract language, the Court must accept and unenforced the language as written, unless the contract is contrary to law or public policy." *Harbor Park Market, Inc. v. Gronda*, 743 N.W.2d 585, 588 (Mich. Ct. App. 2007).

- 8 -

The operative language is narrow:

> Defendants guarantee that they will provide at least 225 e-bikes/e-tricycles within 90 days of this Agreement. In the event that less than 225 units are provided, then Defendants shall be required to compensate Trivel the sum of $1,390 for each unit less than 225. Each e-bike/e-tricycle constitutes a "unit" for purposes of this paragraph regardless of its condition so long as it was a unit provided by Trivel.

ECF No. 28-1 at PageID.140. Neither party disputes that the 100 units delivered in July 2025 were satisfactory, ECF No. 29 at PageID.407; the dispute turns on the September and October pickups, and specifically on whether scooters, unknown-brand e-bikes, and loose components fall within the above definition. They do not.

*Scooters*. VectorTek argues that the contractual language does not exclude scooters. *Id.* at PageID.405. That argument inverts the applicable law. Under *Grinnell*, the agreement's affirmative specification of "e-bikes/e-tricycles" is a listed definition that operates to exclude other items. *See Grinnell*, 171 N.W. at 400. The settlement agreement excludes scooters by not including scooters in the list of small personal transportation vehicles; no express scooter carve-out is necessary.

VectorTek also reasons that because e-bikes and scooters each have two wheels, scooters should count as e-bikes. ECF No. 29 at PageID.412. But it is the ordinary meaning of these terms that matter, not shared features. When people refer to a "scooter," they likely mean "[a] vehicle (originally a children's toy) consisting of a footboard mounted on two wheels and a long steering handle, propelled by

resting one foot on the footboard and pushing the other against the ground." OXFORD ENGLISH DICTIONARY, "*scooter* (n.), sense 5.a," March 2026. A "scooter" can also be electrically powered. *Id.* But when they talk about "bicycles" or "bikes" they likely mean "[a] vehicle having two wheels held one behind the other in a frame, typically propelled by a seated rider using pedals, and steered by means of handlebars at the front." OXFORD ENGLISH DICTIONARY, "*bicycle* (n.)," June 2026. To illustrate, no reasonable person would register to participate in the *Tour de France*[3] on a scooter just because both have two wheels.

Moreover, the prices of scooters and e-tricycles confirm the distinction. ECF No. 27-3 at PageID.106–07 (scooter and e-tricycle sale listing images). The parties fixed the compensation for each missing unit at $1,390. ECF No. 28-1 at PageID.140. E-bikes/e-tricycles cost $1,390, while scooters cost $660. *Id.* Accordingly, no reasonable person would read "scooter" to mean "e-bike/e-tricycle." Thus, the delivered scooters do not satisfy VectorTek's obligations under the settlement agreement.

---

[3] *Tour de France* is the most famous cycling race in the world. It occurs every year in France and covers 2,156 miles in a rough circuit of the country. JOEL GUNTER, *The Tour de France: A Guide to the Basics*, The Telegraph (July 15, 2015), https://www.telegraph.co.uk/sport/othersports/cycling/tour-de-france/9400588/The-Tour-de-France-a-guide-to-the-basics.html (Last visited July 24, 2026).

*Parts and components*. VectorTek next contends that the boxes delivered were not empty but contained "parts and components," and that a "unit" is simply "a box that is returned from QVC to VectorTek"—which they say is the reason for the broad "regardless of its condition" language. ECF No. 29, PageID.410–11. VectorTek argues that by not accepting these deliveries, Trivel seeks to rewrite the parties' agreement. Not so. Rather, it is VectorTek's position that would improperly revise the plain language of the settlement agreement.

VectorTek argues that the settlement agreement did not say "regardless of its condition except damaged return[s] or regardless of its condition except incomplete returns, regardless of its condition except missing parts." *Id.* at PageID.412. While this is a true statement, the argument misses the mark. A unit is an "e-bike" or "e-tricycle," not the parts or components of which they are made. For example, one box contained a single battery. *Id.* at PageID.249. A battery is a component, not an e-bike or e-tricycle; no reasonable person would understand that the plain meaning of "e-bike/e-tricycle" includes a battery alone in a box. The same goes for boxes containing loose handlebars, wheels, baskets, and the like. Holding otherwise would mean that a tire store is a car dealership selling "incomplete" cars or cars "regardless of their condition." Therefore, the delivered parts and components also do not satisfy VectorTek's obligations under the settlement agreement.

- 11 -

*Unknown brand e-trike*. The settlement agreement required VectorTek to return 225 units "provided by Trivel." *See* ECF No. 28-1 at PageID.140. This limitation is expressed in the text and requires no interpretation; a vehicle not produced by Trivel does not satisfy VectorTek's obligations under the settlement agreement.

In conclusion, the settlement agreement has only one reasonable reading: a "unit" is a e-bike or e-tricycle, in whatever condition, that Trivel originally provided. Scooters, loose parts and components, and third-party-branded vehicles fall outside that definition. VectorTek's contrary reading would require the Court to disregard the ordinary meaning of the words the parties chose.

### 2. Bills of Lading

VectorTek also argues that the bills of lading drafted by Trivel prove that, on top of the July units, they received 50 units in September 2025 and 57 units in October 2025. ECF No. 29 at PageID.407. This argument is unpersuasive. The U.S. Customs and Border Protection defines bill of lading as a "legally binding document that functions as a receipt of goods, the conditions on which transportation is made (contract of carriage), and document of title for cargo entering or leaving the United States." U.S. CUSTOMS AND BORDER PROTECTION, *Bill of Lading Document*, https://www.help.cbp.gov/s/article/Article-1216?language=en_US (last visited July 29, 2026).

- 12 -

Here, Trivel's president, Olivier LaJoie, testified that Trivel prepares each bill of lading based on what VectorTek reports before the pickup. ECF No. 29 at PageID.271. The document therefore reflects VectorTek's advance representations, not an independent verification of what the trucks in fact carried.[4] That a bill of lading lists 50 units in September and 57 in October establishes only what VectorTek said would be picked up—not necessarily that 107 qualifying e-bikes or e-tricycles were delivered. And as the videos, photographs, and Mr. Davault's testimony show, much of what was actually delivered consisted of scooters, loose components, empty boxes, and a third-party-branded trike—none of which counts as an "e-bike" or "e-tricycle" under the agreement. The bills of lading thus prove delivery of packages; they do not prove delivery of e-bike/e-tricycles.

Accordingly, the evidence shows that VectorTek delivered only 127 qualifying units. VectorTek is liable for the remaining 98 e-bikes/e-tricycles.

### C. Damages

Trivel asserts that it is entitled to compensatory damages in connection with VectorTek's breach of the agreement. The agreement provided that "[i]n the event

---

[4] For example, a bill of lading might say one package contains a pair of leather shoes because that is what the customer ordered and what the seller represented would be inside. When the box arrives, it may hold the leather shoes as promised—or it may hold canvas sneakers, a single shoe, or packing foam and nothing else. The bill of lading does not certify what is actually in the box; it records merely what the parties said would be there before anyone opened it. The customer learns the truth only upon inspection.

that less than 225 units are provided, then VectorTek shall be required to compensate Trivel the sum of $1,390 for each unit less than 225." ECF No. 28-1, PageID.140. As established above, VectorTek failed to deliver 98 units required by the agreement, each valued at $1,390, for a total award of $136,220. Accordingly, this Court finds that Plaintiff has proven it is entitled to that sum in connection with VectorTek's breach and, thus, will enter a judgment awarding Trivel compensatory damages in that amount.

## IV. CONCLUSION

Accordingly, this Courts **GRANTS** Plaintiff's Motion to Enforce Settlement, ECF No. 21.

This Court further **ORDERS** Defendants to pay $136,220.00 to Plaintiff within 14 days of entry of this Order.

**This is a final order that closes the above-captioned case.**

*/s/ Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: August 4, 2026

- 14 -